# Henry H. Sharman, Plff. in Err., *v.* Levi Quier, Admr. of Reuben E. Addams, Deceased.

Where a partnership has been dissolved but the business has not been settled nor an accounting had, the partner continuing the business cannot recover in assumpsit against his retiring partner for articles and money received from him by the latter since the dissolution, if the evidence shows that the articles and money were received under an agreement that they were on account of the· retiring partner's interest in outstanding partnership accounts, and that they should enter into the final settlement of the partnership business.

The partner continuing the business cannot recover in assumpsit against his retiring partner on a note executed to him by the latter, where the evidence shows that the consideration of the note was a due bill, given by the retiring partner for money collected by the other, out of partnership funds, to be used as a voucher in settlement of their partnership business.

(Decided October 4, 1886.)

Error to the Common Pleas of Berks County to review a judgment on a verdict for defendant in an action of assumpsit. Affirmed.

The facts are fully stated in the following charge to the jury in the court below, by SASSAMAN, J.

"This is an action of assumpsit, founded upon several claims, brought by Henry H. Sharman against Reuben E. Addams for the recovery of certain moneys. The principal claim is upon a promissory note, dated April 13, 1882, for \$163.20, payable in ninety days, with interest. The other claims are upon book accounts, running from January 8, 1873, to October, 1877 . . . making, according to the testimony of Charles Thompson, \$51.05, those entries having been made in his handwriting.

NOTE.—The rule is well settled that assumpsit cannot be maintained by one partner against the other for matters arising from the partnership business, until there has been a settlement of accounts. Leidy v. Messinger, 71 Pa. 177; Crow v. Green, 111 Pa. 637, 5 Atl. 23; Bittner v. Hartman, 139 Pa. 632, 22 Atl. 646; Elmer v. Hall, 148 Pa. 345, 23 Atl. 971; Murray v. Herrick, 171 Pa. 21, 32 Atl. 1125. But the rule is otherwise where there has been a single joint transaction (Howell v. Kelly, 149 Pa. 473, 24 Atl. 224; Benjamin v. Zell, 100 Pa. 33; Kutz v. Dreibelbis, 126 Pa. 335, 17 Atl. 609) ; or where the claim does not arise from the partnership transactions (Canfield v. Johnson, 144 Pa. 61, 22 Atl. 974; Rush Centre Creamery Co. v. Hillis, 3 Pa. Super. Ct. 527).

"The items, charged in the handwriting of the plaintiff, amount to $14.75, with an item of $25 cash loaned to the defendant, charged in December, 1881, by John Van Reed, an employee of the plaintiff.

"The items as charged in the books are not denied. Nearly all of them, if they were denied, would be barred by the statute of limitations. That statute, however, has not been pleaded, and therefore there is no such defense made to the claim of the plaintiff. The defense is that the bills were not incurred as charged, that the charges were not made as claimed, and that the money was not received in the manner alleged.

"There is no advantage taken by reason of the running of time barring the right of the plaintiff to recover; but if the case stood in that position, the plaintiff would be entitled to a verdict for the full amount of his claim, $250, with interest.

"[The defendant contends that the plaintiff is not entitled to recover in this suit under the proposition of law, that if there was an unsettled partnership account, as he alleges, between himself and the plaintiff, and the charging of the items in controversy arose out of the partnership transactions and belonged to the partnership, an action of assumpsit cannot be maintained.]

"An action of assumpsit is a personal action for the recovery of money in some form. It is the most liberal of the forms of action that are brought for the recovery of money, and hence it is the action most adapted to this suit.

"[If the defendant's allegations are found to be true in fact, and are supported by the evidence, there cannot be a recovery by the plaintiff, for the reason that the partnership accounts will have to be settled before he will be entitled to a verdict against the defendant upon matters arising out of the partnership transactions.] The reason of this principle, in law, is that the settlement of partnership accounts generally ramifies into the multifarious transactions of a partnership business, undertaken for the purpose of the union of capital or the union of labor, whereby larger enterprises can be fostered and maintained than by the efforts of a single individual.

"The principal witnesses in the case were the plaintiff and defendant, and it appears by their testimony that a partnership existed between them anterior to June, 1872; that in June, 1872, there was a dissolution of that partnership, at which time Shar-

man assumed the control of the business; that the sum of $1,824 was paid by Sharman to Addams for his share of the stock in trade, and that there was then remaining a small item of $100 or $120 of material in the currying shop, as to which they had not come to terms. The main allegations in the case are supported by one party and denied by the other.

"[It also appears that there were in the neighborhood of $5,-000 uncollected claims standing on the partnership books against outside parties; that the collection of this amount was left in the hands of Mr. Sharman, who continued to carry on the business, and that he was to devote the sum of $1,600 out of the said collections to the payment of a claim of Rufus Addams.]

"It is not contended by the defendant that the claim of Rufus Addams was not satisfied, but it is alleged that, so far as the remaining collections are concerned, there was no settlement made between the parties; that Mr. Addams collected about $500, and that there was no account rendered by Mr. Sharman as to the collections he made in reference to the other outstanding claims. If the sum of $1,600 was collected by Mr. Sharman, and $500 by Mr. Addams, there would remain about $3,000 of outstanding claims to be still collected; but no evidence has been offered to show that this sum was ever collected by the plaintiff.

"It further appears that, notwithstanding this position of affairs, there has been no eventual settlement of the partnership accounts, and that no balance was ever struck as between the partners. As long as there is no account stated, or a settlement made between the parties, an action of assumpsit cannot be maintained, the proper action being by account render or bill in equity, in which case the master calls upon the parties to produce the books before him, in order that he can ascertain the actual status of the partnership, and settle the differences existing between them. These matters cannot be brought into an action of assumpsit by way of set-off, by the defendant, like unliquidated claims in other respects, because it is an unadjusted balance, which must first be ascertained and a settlement made on that basis.

"It is also claimed on behalf of the defendant that the goods and the money charged on the books were received under an arrangement made after the dissolution of the partnership. [The defendant admits that he received the goods, and consented that they should be charged on the books, but that when the $25 was

obtained, he insisted upon giving a due bill as a voucher to be used upon the final settlement between himself and the plaintiff, and that Sharman refused to accept it, saying that the amount should be charged on the account, and that all these items thus charged were to be on account of what was to come out of the partnership.

"If such an arrangement was made, it was perfectly competent for the parties to have done so. What they agreed upon between themselves is the contract, and if they acted under that conract, they are bound by its terms.]

"[If the agreement was that the due bill, upon which the note in suit was founded, was given as a voucher to be used only in the settlement of the partnership accounts, after the collection of the outstanding claims, then, instead of being a personal loan from one individual to another, it would be a payment on account of the collection of the partnership claims.]

"While it is perfectly competent for partners to agree that a written paper shall be in the form of a receipt, either as a due bill or a note, it is proper for me to say that it is good business practice, in making such an arrangement, to give the due bill or the note on account of the partnership. It so happens, however, that business men do not always follow the strict, technical rules of business, so that, when they bring suits against each other, courts and juries must view the matters in controversy in the light in which they are supposed to have been intended by the parties; for, if their acts were intended to operate in a certain way, and courts and juries interpreted them differently, the legal process would be invoked simply to perpetrate a wrong against one or the other.

"[This is the way in which the case presents itself. If the matters in controversy referred to the partnership, were treated by the plaintiff and defendant as pertinent to the partnership existing between them, and in furtherance of the settlement of the partnership accounts, your verdict will be for the defendant;] but if you believe the allegation of the plaintiff, that there was no such arrangement, agreement, or understanding, and that a mere personal credit on the books was given by the plaintiff to the defendant, for the goods he received and the money loaned, then an action of assumpsit can be maintained, and the plaintiff is entitled to recover. There is no plainer law than this law relating to partnerships, and actions of assumpsit have never been permitted to be maintained in settling partnership accounts.

"If the loan of $25 to the defendant was a mere individual loan, made by the plaintiff, in contemplation of that amount coming out of the partnership in the settlement, and it was given not as a matter of convenience or voucher, but for the payment of a personal debt, the plaintiff is entitled to recover that amount; for if there can be a recovery upon the due bill, the note in suit, without any other evidence appearing, would stand in precisely the same relation, because, if the source of the note was good as between the parties the mere renewal of the due bill in the form of a note would stand in the same relation, as this case has to be tried according to the original contract made between the parties, at the time of the giving of the credit by the plaintiff.

"[If, however, the due bill was intended as a matter of convenience, or an advance on account of the partnership collections, and in furtherance of the settlement of the partnership accounts, there can be no recovery in that behalf against the defendant, and the question would have to be settled by a bill in equity, which, it has been stated, is now pending in this court.]

"[The only way by which such a note can be taken out of the strict letter of the law is by alleging fraud or mistake. A note reduced to writing cannot be altered, amended, or modified by any parol arrangement; but if a part of the consideration of the note militates against it, or if fraud is alleged in the making of it, such evidence can be produced against a recovery. The evidence that the note was to be a mere renewal of the due bill would apply as well to the note as to the due bill; but, if the due bill was positive evidence of a personal indebtedness, the note would stand in the same relation, and there could be no defense against it.]

"I have given you these instructions covering the law of the case, and the question for you to determine is whether you will believe the testimony of the plaintiff or defendant. The court cannot aid you any further than to state the facts, as proven by the one side or the other, and the theory advanced upon those facts, if there are any facts to support it; but, if there are no facts to support the theory, it would be improper for the court to submit that theory to the jury.

"[Taking the case as presented by the plaintiff, I would have to instruct you that under the evidence submitted the note was absolute evidence of a debt, and as such could not be varied or

modified by parol evidence, in which event there would be nothing to prevent a recovery against the defendant upon it. If, however, the giving of a note was in the manner alleged by the defendant, it would be only evidence of so much money having been received on account of the settlement contemplated in the final winding up of the partnership transactions, and the plaintiff could not recover.]

"It is the duty of the defendant to sustain the theory he has advanced in this case. If you believe the testimony he has submitted, it would be applicable as to any matter it would cover, either in whole or in part. If you believe the testimony of the plaintiff, who denies the allegations made by the defendant, your verdict should be rendered in his favor for either the whole or part of his claims, as you may determine that testimony may cover."

Plaintiff presented the following points:

1. "The rule of law in Pennsylvania is that parol evidence cannot be given to vary, alter, or contradict written evidence, except on the ground of fraud, accident, or mistake. As there is no evidence of either fraud, accident, or mistake when the note of April 13, 1882, for $163.20 was given by the defendant, its terms cannot be varied or contradicted by any evidence submitted in this case, and the plaintiff is entitled to recover its amount with interest from its date."

"*Ans.* As an abstract legal proposition this point is correct; but there is sufficient evidence in this case to submit to the jury the question as to whether the note was a loan made as a matter of convenience, or intended to be used as a voucher in the final settlement between the parties."

2. "As to the loan of December 20, 1881, $25, sworn to by the plaintiff and admitted by the defendant, there is no evidence to prevent the plaintiff from recovering this amount and its interest." Refused.

3. "As to the balance of the plaintiff's claim, amounting to $64.80, admitted by the defendant, there is no sufficient evidence to prevent a recovery therefor with interest." Refused.

4. "As the partnership accounts between the plaintiff and defendant are admittedly incidental, and cannot be tried in the present suit, the court is requested to instruct the jury to disregard all the evidence in relation to the said partnership."

"*Ans.* I submit this case to the jury, and therefore cannot affirm this point, as it would take it away from their consideration."

Defendant offered to prove by Sharman, the plaintiff, that Addams frequently requested a settlement of the partnership matters and that Sharman never told Addams that he had a book debt against him. Defendant also offered to prove the status of the account stated between the plaintiff and defendant in regard to the partnership. The court admitted the offers, but refused to permit an investigation of any unsettled and unstated partnership accounts.

The court admitted defendant's offer to prove by Addams that the note in suit was given as a renewal of a due bill, upon the strength of the representation then made by plaintiff's attorney that it was merely given to hold the due bill good, as it was about to run out and the statute of limitations would apply; that the defendant at the time informed the attorney that the due bill was not held by Sharman for money he had borrowed from Sharman, but was held as a mere voucher or receipt for that amount of money advanced on account of a share in the partnership upon claims which Sharman had collected subsequent to the dissolution of their partnership; that Addams was assured by the attorney that said note was not to be pushed; that defendant gave the said note at ninety days, with the understanding that he would endeavor to procure an amicable settlement with Sharman, his partner, and that then all these matters would "come right."

A verdict was returned for defendant upon which judgment was entered *nunc pro tunc* in the name of Levi Quier, administrator, the death of defendant subsequent to the verdict having been suggested by petition filed by him. Plaintiff took this writ, assigning as error the portions of the charge embraced in brackets, the answers to plaintiff's points, and the admission of the evidence as above stated.

*A. G. Green,* for plaintiff in error.—Cited and relied upon— Hill v. Gaw, 4 Pa. 493; Anspach v. Bast, 52 Pa. 356; Martin v. Berens, 67 Pa. 459; Wharton v. Douglass, 76 Pa. 273–276; Thorne v. Warfflein, 100 Pa. 519; Phillips v. Meily, 106 Pa. 536.

*Ermentrout & Ruhl* for defendant in error.

OPINION BY MR. JUSTICE STERRETT:

In June, 1872, the copartnership theretofore existing between plaintiff and defendant, as "Addams & Sharman," in the leather and shoe finding business, was dissolved by sale of Addams's interest in the stock on hand to Sharman, by whom the business was continued. At that time, as the testimony tends to show, sundry claims in favor of the firm, aggregating about $5,000, were outstanding. The books of the firm were left with Sharman for the purpose of collecting these accounts, and after paying out of the amount realized therefrom a firm note of $1,600, the residue was to be divided between the parties. Subsequently, each of them collected some of these accounts, but, if defendant's testimony is believed, there never was a final settlement of the partnership business, so far at least as the outstanding accounts are concerned. It is true there is some conflict of testimony on this subject, but the jury was fully warranted in finding the fact as claimed by defendant. It further appears that a bill in equity for final settlement of the partnership business is now pending.

Conceding the correctness of the items composing plaintiff's claim in this case, defendant contended it was understood and agreed between him and plaintiff that each of these items should be regarded as received on account of his interest in the outstanding accounts of the partnership, and should thus enter into and form part of the final settlement of the partnership business. If the articles charged in plaintiff's books, and the cash paid by him to defendant, were respectively received by the latter with this understanding, there is no reason why the agreement should not be enforced. As to whether such was the understanding of the parties at the time or not, the evidence was conflicting. While plaintiff's testimony tended to show there was not, that of defendant tended to prove there was such an understanding. Thus a question of fact, proper for consideration of the jury, was presented, and the same was fairly submitted.

It is unnecessary to refer specially to the testimony, tending to sustain defendant's contention. Suffice it to say that it was not only competent and relevant, but quite sufficient to justify its submission to the jury.

The consideration of the note in suit was the principal and

interest of a due bill given nearly six years before, for money then received by defendant, as he testifies, out of partnership funds which Sharman had collected. He further says the due bill was given as an acknowledgment of the amount received, to be used as such in settlement of their partnership business. He also explains how the note was given in lieu of the due bill, and with the same understanding that it should be brought into the settlement.

These matters were all proper for the consideration of the jury; and we find nothing in either of the specifications of error that calls for a reversal of the judgment entered on their verdict.

Judgment affirmed.